Filed 6/30/15  In re M.N. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.N. et al., Persons Coming Under the Juvenile Court Law. | D066889 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3690A-C) |
| v. | |
| J. D., | |
| Defendant and Appellant. | |

APPEAL from a judgment and order of the Superior Court of San Diego County,

Gary M. Bubis, Judge.  Affirmed.

Patti L. Dikes for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County

Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and

Respondent.

Appellant J.D. (Mother) appeals a juvenile court judgment terminating her parental rights to M.N., N.N., and H.N., ages 5, 4, and 3 (the children), and selecting adoption as their permanent plans. (Welf. & Inst. Code, § 366.26; all further statutory references are to this code unless noted.) Mother also appeals the court's order denying a hearing on her modification motion, which sought placement of the children with her at her current residential drug treatment facility, or resumption of her reunification services and a transition plan. (§ 388.) The rights of her husband, the presumed father (Father), were also terminated, and he did not appeal.

On appeal, Mother first argues the court abused its discretion in denying her an evidentiary hearing on her motion for modification, and the court should have found she made a prima facie case of significantly changed circumstances, based on her months of sobriety since July 2014 and her participation in treatment programs. (§ 388.) She undertook those efforts after her reunification services were terminated at the six-month review hearing in May 2014. (§ 361.5, subds. (a)(1)(B), (C) [short reunification period for parents of very young children/sibling group].) Mother further challenges the sufficiency of the evidence to support the court's finding that no exception to adoption preference applied, i.e., the beneficial parent-child relationship. (§ 366.26, subd. (c)(1)(B)(i); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*).)

The record does not show any abuse of judicial discretion or lack of supporting evidence, and we affirm the judgment and order.

FACTUAL AND PROCEDURAL BACKGROUND

A.  Jurisdiction, Disposition, and Termination of Reunification Services

In April 2012, the two boys were under three years old when respondent San Diego County Health and Human Services Agency (the Agency) received a referral for child neglect.  Mother tested positive for marijuana and opiates while pregnant with H.N.  The Agency offered voluntary services to Mother and Father.  When H.N. was born prematurely in May 2012, she had chronic lung disease that needed regular medical care.

In July 2013, the Agency received new referrals that the family was living in a motel where the parents were using opiates and methamphetamine.  The informant stated that the children's medical needs were apparently being neglected.  At an unannounced visit, an Agency social worker saw that the children appeared to be in need of medical care (skin conditions and unkempt), and there were no baby supplies at the unit.

Since Mother and Father admitted they were regularly using methamphetamine and had not been able to remedy the family's known problems, and no other family members were available to assist, the Agency filed dependency petitions for the minors in July 2013.  (§ 300, subd. (b)(1) [parents unable to provide regular care because of their substance abuse, posing substantial risk to minors of serious physical harm/illness].)

According to the July 18, 2013 detention report, Mother said she had been using methamphetamine for the past five months and had previously used heroin and other drugs.  She and Father had been married for four years and they smoked methamphetamine together.  Mother had a dependency background as a neglected child.

The children were taken into protective custody and detained with nonrelated extended family members (NREFM).

In the August 13, 2013 Agency jurisdiction report, the social worker stated when Father was asked to submit to drug testing, he said he needed to check with his attorney first. Mother did not remember whether H.N. had been to a doctor recently. When the children had been medically examined on being detained, the doctor reported they were filthy, the boys had skin conditions, one of them had dental problems and the other, a "lazy eye" condition requiring evaluation, and H.N. was overweight. Mother was currently homeless.

In July 2013, a substance abuse specialist (SAS) noticed during an interview that the parents were acting extremely intoxicated. She recommended that they participate in a detoxification program and residential treatment. The parents did not keep their scheduled appointments with social workers in July and August 2013. A court appointed special advocate (CASA) worker was appointed for the children in August 2013.

The juvenile court made jurisdictional findings in September 2013, ordering that the parents be provided with reunification services for six months. Because the children were relatively young, the parents were told their reunification services could be terminated after six months if they failed to regularly participate in their treatment programs. (§ 361.5, subds. (a)(1)(B), (C).) The children were placed in out-of-home care and the parents were given case plans with treatment programs. Supervised visits were allowed. Mother visited the children on October 21, 2013. Father visited them a few

times but did not comply with the court-ordered services, and he did not oppose the termination of his parental rights.

After the jurisdiction and disposition hearing, Mother continued to have difficulty maintaining sobriety, and she failed to attend an intake appointment with "CRASH," a substance abuse recovery program. As of early February 2014, Mother had not visited the children for a few months, and she told the social worker she was still using methamphetamine but was trying to detoxify at a relative's home. Mother enrolled in a residential treatment program in February but only stayed four days, although the staff persons advised her not to leave. Mother visited the children again in March 2014.

In March 2014, the Agency's status review report stated that social workers had very little contact with the parents. The Agency learned that the NREFM family was not willing to provide long term placements, and on March 12, 2014, moved the children to a licensed foster home. Those foster parents (the caregivers) were interested in adoption, if reunification with Mother were not possible.

At the six-month review hearing on May 1, 2014, the juvenile court admitted the Agency's reports into evidence and accepted stipulated testimony from Mother about upcoming treatment plans, as reported by her attorney. The court found the Agency had provided each parent with reasonable services. The court made a finding that return of the children to parental custody would be detrimental, and the services provided had been reasonable. The parents had not made substantive progress with the provisions of their case plans. The court terminated services and scheduled a permanency planning hearing. (§ 366.26.)

5

Mother filed a request to challenge the orders of the juvenile court at the six-month review hearing. (Cal. Rules of Court, rule 8.452.) However, this Court dismissed the case June 10, 2014 after Mother's attorney indicated there were no viable issues for review.

### B. Modification Motion and Permanency Planning Hearing

As of July 2014, Mother completed detoxification and was enrolled in ongoing programs at a residential treatment facility, Kiva. In August 2014, the children visited Mother at her facility, and she began making weekly phone calls to them. The children started to make weekly 90-minute visits to Mother at the facility in September 2014. In the August 2014 assessment report, the Agency's social worker noted that the children were doing well in their placement, but sometimes the boys had trouble sleeping on the days that Mother called them. The older boy told the foster mother he did not want to move back in with Mother (referring to her by her first name), and the people he remembered from the hotel.

The CASA filed two additional information reports about behavioral problems the children seemed to having after the September visits with Mother (N.N.'s aggression toward other children at preschool, and the boys wetting their beds more often). The children's attorney and the Agency requested that the court suspend parental visitation pending trial, which was set for October 10, 2014.

On October 1, 2014, Mother filed a motion under section 388 for modification of the prior orders terminating her reunification services and setting further hearings. She requested that the children's placement be made with her, or that services be reinstated.

6

Mother stated she had been sober since July 2014 and was willing to continue necessary services. In support, Mother provided a letter from the Kiva program dated September 30, 2014, stating she had been a resident there since July 22, was testing clean and was participating in recovery workshops.

The Agency opposed the modification request, on the grounds that Mother was only in the early stages of her recovery from a serious illness, addiction to methamphetamine and opiates, which would require lifelong treatment. The social worker felt Mother had not eliminated the risk factors that led to the dependency proceedings. H.N. continued to have health problems, including a condition that was impairing the function of her arm. The older boys continued to ask the CASA or the caregivers for reassurance that they would not have to go live with Mother. They called their prospective adoptive parents, "Mommy and Daddy," and they were glad to greet "Daddy" when he picked them up from visitation.

On October 1, 2014, the court suspended visitation and ordered that the modification petition be heard on October 7, before the contested permanency planning hearing on October 10, 2014. At the October 7 hearing, the court took judicial notice of the prior findings and orders in this case and reviewed the file. Mother's request for an evidentiary hearing was denied, because she had not met the prima facie burden of showing the required elements in her petition for modification.

The contested section 366.26 hearing proceeded, with the court receiving into evidence reports from the CASA and the Agency, and testimony from the parents and the social worker. At the close of the hearing, the court found the children were adoptable,

and the asserted exception to adoption found in section 366.26, subdivision (c)(1)(B)(i) did not apply (no beneficial parental relationship). Adoption was found to be in the children's best interests, parental rights were terminated, and adoption was chosen as their permanent plan. Mother appeals. The children's attorney has joined in the Agency's respondent's brief.

## DISCUSSION

## I

### *MODIFICATION MOTION*

Mother contends the juvenile court erred or abused its discretion by declining to order an evidentiary hearing on her petition for modification under section 388. Mother was seeking reinstatement of her reunification services, placement of the children with her at her facility, and to have the order scheduling a section 366.26 hearing set aside.

### A. Applicable Standards: Two Prongs; Prima Facie Case

As the petitioner, Mother had the burden to show by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the children. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; § 388, subd. (a).) To trigger the right to a hearing on the petition, she needed to set forth a prima facie showing of both of those elements. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).) Although the court must broadly construe the request for modification, "if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the

8

proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*Ibid*.)

In deciding whether the petition makes the necessary showing, the juvenile court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) This court reviews the grant or denial of a petition for modification under section 388 for abuse of discretion. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) We inquire if the lower court exceeded the limits of legal discretion by making any arbitrary, capricious, or patently absurd determinations. (*In re Stephanie M.*, *supra*, 7 Ca1.4th 295, 318; *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

B. Analysis on Changed Circumstances and Best Interests

On appeal, Mother contends she successfully showed there were significant changes of circumstances, affecting the best interests of the children. Although her reunification services had been terminated in May 2014, since that time, she completed her detoxification program. Since July, she had been participating in ongoing treatment at Kiva, and was at the highest step of her program that was available there. This track record showed she was now actively engaged in her recovery. Although Mother missed a few months of visits after March 2014, she had resumed visitation in mid-August and was making weekly visits and telephone calls by September.

9

At the time that Mother filed her petition, October 1, 2014, there was a pending joint motion by the Agency and the children's attorney to seek suspension of Mother's visitation pending the next court hearing. The request was based on an apparent connection between Mother's visitation and telephone calls to the children, and their recent behavior, which reportedly showed they were more anxious and distressed than usual on those days. The court suspended visitation without making express findings, but noting that suspension would promote stability while not affecting the upcoming hearings much, if at all.

The Agency's addendum report opposed the modification request, stating that Mother could show only that she was in an early stage of recovery from her addiction problems. The Agency's view was that she had not yet eliminated the risk factors that led to the dependency proceedings, and that modification requests on the eve of a permanency planning hearing were disfavored. (See *In re Edward H.* (1996) 43 Cal.App.4th 584, 594.) With respect to the children's status, the older boys were sometimes asking their caregivers and the CASA for reassurance that they would not have to go live with Mother. M.N. did not want to return to live with the people at the hotel. The children knew their caregivers, the prospective adoptive parents, as "Mommy and Daddy."

In making its ruling, the court reviewed the file and took judicial notice of the prior findings and orders, and determined Mother had failed to meet her burden of making a prima facie case, such that no evidentiary hearing was required. This finding is well supported. Although Mother provided the court with some evidence to show she

10

may be changing to improve her ability to parent, the efforts she showed were of fairly recent origin and had not yet fully addressed the essential issues that brought the children into the dependency system. The court observed that she was not ready to accept placement of the children. The Agency's evidence suggested that Mother was still at risk of regression to her former addiction, as she was at an early stage of her 12-step program. She was due to leave the facility in a few months, for another such group home, some of which did not allow children.

Even if the evidence at the hearing fully supported the changed circumstances as alleged in Mother's petition, those facts would not have supported a conclusion that the children's best interests would be served by the modifications she was requesting. (*Zachary G., supra*, 77 Cal.App.4th 799, 808.) No evidence supported Mother's claim that the children's interests would be best served at this stage of the proceeding by removing them from the caregivers' home, which they evidently were experiencing as stable, caring and permanent, in order to be returned to Mother's care at a residential treatment facility. On this record, it was not an abuse of discretion for the juvenile court to conclude that the petition did not, even liberally construed, require that a hearing be granted to pursue it.

II

*TERMINATION OF PARENTAL RIGHTS*

It is not disputed that these children are likely to be adopted, either by the interested caregivers, or by other approved San Diego County families interested in adopting children with such characteristics. However, Mother contends the beneficial

11

parental relationship exception to adoption properly applies to this case. (§ 366.26, subd. (c)(1)(B)(i); *Autumn H., supra,* 27 Cal.App.4th 567, 575.) She argues that insufficient evidence supports the court's decision to terminate her parental rights, in light of the strength of the bond she had established with the children.

### A. Applicable Standards; First and Second Prongs

The preference for adoption will not apply if termination of parental rights would be detrimental to the child because the parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i); *Zachary G.*, *supra*, 77 Cal.App.4th 799, 809.) "Regular visitation and contact" are statutory threshold requirements for a claim that this beneficial parental relationship has been maintained. (§ 366.26, subd. (c)(1)(B)(i).)

On review, the Agency argues for an adapted or hybrid approach for review of this type of decision about the beneficial parental relationship exception. In *In re J.C.* (2014) 226 Cal.App.4th 503, the court applied a substantial evidence standard of review to the preliminary factual issues of whether the parent had maintained regular visitation and contact with the child, and whether the parent proved he or she had a beneficial parental relationship with the child. However, as to the weighing test, in which the juvenile court balances the parent-child relationship against the benefits the child would derive from adoption, the abuse of discretion test may be applied to evaluate this, a " ' " 'quintessentially' " discretionary decision.' " (*Id*. at p. 531; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

12

There is a discretionary aspect to the trial court's determination of a "benefit from continuing the relationship," under the terms of section 366.26, subdivision (c)(1)(B)(i). Based on the respective showings, the court must balance "the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*Autumn H., supra,* 27 Cal.App.4th at p. 575.) The court must find "a compelling reason for determining that termination would be detrimental to the child," (§ 366.26, subd. (c)(1)(B)), due to the parent's regular visitation and contact with the child, coupled with benefit to the child from continuing the relationship. (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.)

The weight of authority still applies the substantial evidence test to appeals from decisions about the beneficial parental relationship exception. (*Autumn H., supra*, 27 Cal.App.4th 567, 575-577.) The juvenile court considers the issue on a case-by-case basis, taking into account the many variables that can affect the parent-child relationship. (*Id.* at pp. 575-576; *In re J.C., supra*, 226 Cal.App.4th 503, 532.) Among the variables to be considered in evaluating the benefits in a parental relationship are the child's age, the amount of time the child spent in the parent's care, whether the interactions are positive or negative, and whether the child has particular needs that the parent can satisfy. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467.)

"It is the trial court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may

13

be drawn from that evidence. [Citations.]" (*In re Casey D., supra,* 70 Cal.App.4th at pp. 52-53.) In reviewing the sufficiency of evidence, the reviewing court makes presumptions in favor of the judgment, views the evidence in the light most favorable to the Agency, and gives the order the benefit of all reasonable inferences. (*In re C.F., supra,* 193 Cal.App.4th 549, 553; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

### B. Application of Criteria: Visitation and Contact

With regard to the visitation issue, Mother did not have any contact with the children between October 2013 and March 2014, when one visit took place. Again until August 2014, she did not visit them, but called sometimes. The assessment social worker reported that as of June 2014, the older children sometimes had trouble sleeping on the days Mother telephoned them.

When Mother called the children at the end of July, after she started her Kiva program, the caregiver observed that the children seem to be acting negatively after the call. M.N. was "grunting," wet the bed, and told the caregiver that he did not want to move back in with Mother and the people from the hotel. N.N. acted clingy and constantly sought comfort from the caregiver.

Starting on August 13, 2014 and into September, Mother attended weekly 90-minute supervised visits with the children at her Kiva program facility, and she made weekly telephone calls. In the reports filed by the CASA and the Agency's social worker, the visits were reported to be friendly, although the children mainly played independently or with each other, without initiating much interaction with Mother. At the end of those visits, each of the children acted glad to see the caregiver arrive, and they did not show

14

any emotional distress in leaving Mother's company.  M.N. kept asking the caregivers or the CASA whether Mother was going to take him away or if the children were going to have to move.  The boys did not want to sleep in their own room.

In September 2014, N.N. started acting out at preschool more often, and he was kept out of school temporarily on Mother's visitation days.  He had a behavioral therapist who was working with the caregivers on managing his outbursts.  Later, he was not allowed to return to the preschool because his aggressive behavior toward other children could not be accommodated.  The CASA recommended suspending contact with Mother.

At a visit on September 3, 2014, the CASA worker noticed that M.N. and N.N. would briefly interact with Mother, then check in with the CASA for support.  The children separated from Mother without difficulty at the end of the visit.  At the visit on September 10, Mother asked N.N. to come play with her, but he said, "No."  On September 17, Mother hugged the children and brought them sack lunches.  One of the other residents at the Kiva facility told N.N. to "Have fun with your mommy," but he replied, "That's not my mommy."  The children had no problem separating from Mother when it was time to leave.  This record shows that although Mother made some efforts to maintain contact and visitation, they were at best inconsistent and only marginally met the first criterion for this exception to apply.

C.  Application of Criteria:  Benefits of Parental Relationship

In addition to visitation, these proceedings addressed other issues about substantial or incidental benefit from the mother-child relationship.  Mother testified at the hearing that based on her weekly visits, the children were getting used to her and were happy to

15

see her, sometimes calling her Mommy.  Mother believed it was best for children to be with their biological parents.

Father testified that it was unfortunate that it took so long for everything to start progressing in the right direction.  He could not predict whether "we" (he or Mother) could stay clean and out of trouble.

Adoptions social worker Charese Phillips had been assigned to this case a few months previously, and she had reviewed prior reports.  From March to August 2014, about five months, Mother had not visited the children.  In the four visits since then that Ms. Phillips had observed, she noticed that the children had no trouble separating from Mother when it was time to say goodbye.

The assessment reports recommended adoption as the best permanent plan, because the parents had not visited much or maintained a consistent relationship with the children.  They had not attended the children's medical appointments, although they were encouraged to do so.  The caregivers were seen to be the ones who were meeting the children's medical, developmental, and emotional needs.  If the caregivers were unable to adopt for any reason, there were other approved local families interested in adopting a sibling set like this one.  The Agency took the view that it would not be detrimental to any of the children to terminate Mother's parental rights.

At the close of the hearing, the court found by clear and convincing evidence the children were likely to be adopted and none of the statutory exceptions applied.  On this record, the evidence supported the court's key finding that the children did not view Mother as a parental figure.  Mother did not demonstrate there was any significant,

16

positive, emotional attachment, of a parental nature, between herself and these children. (*Autumn H., supra,* 27 Cal.App.4th at p. 575; *In re C.F., supra,* 193 Cal.App.4th 549, 558-559 [parent cannot establish applicability of parent-child beneficial relationship exception with a showing the child derives only a small measure of benefit from maintaining parental contact].)

For example, M.N. called Mother by her first name, whereas all the children called the caregivers Mommy and Daddy. The children had relationships with Mother, but the relationships were consistently observed to be different from a parent/child relationship. At times, the children enjoyed the visits, however, they mainly played with each other and did not initiate contacts with Mother. They continued to look to the caregivers and other familiar adults for security and stability. Mother's telephone calls in June and July and her visitation experiences in August through September 2014 had some negative consequences in the children's behavior afterwards.

The juvenile court had the responsibility of analyzing the evidence about all the circumstances in the children's lives, and it had an adequate basis to conclude that they did not have any special needs that only Mother could satisfy. (*In re Angel B., supra,* 97 Cal.App.4th 454, 467.) Without more evidence of a substantial, overriding benefit to the children if their parental relationship with Mother were continued, this exception to the adoption preference should not apply here. (*Autumn H., supra,* 27 Cal.App.4th at pp. 575-576.) Substantial evidence supports the juvenile court's findings and orders. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th 942, 947.)

17

DISPOSITION

The judgment and order are affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.

18